R. W. R. WALL and IRA WALL, DOING BUSINESS UNDER THE FIRM NAME OF WALL & SON, A PARTNERSHIP, RESPONDENTS, v. AMERICAN RAILWAY EXPRESS COMPANY, APPELLANT.

Kansas City Court of Appeals. May 4, 1925.

1.—Courts—Federal Rule of Law Governs in Cases Involving Interstate Shipments. Rule of law announced by Federal courts governs in case involving interstate shipments.

2.—Carriers—Special Instructions as to Delivery of Express Shipment Held Not Binding on Company in View of Rules and Regulations of Interstate Commerce Commission. Under provision of Interstate Commerce Act (Sec. 8569, U. S. Comp. St.), special instructions, appearing on shipping tag of express packages, to notify consignee and that delivery was conditioned on surrender of original receipt, held not binding upon express company, the rules and regulations of Interstate Commerce Commission published and filed being controlling on parties to shipping contract.

3.—Same—Express Company Not Liable for Mistake Where so to Hold Would Nullify Rules of Interstate Commerce Commission. Express company not liable for mistake of agent where so to hold would nullify rules and regulations of Interstate Commerce Commission, and would work a discrimination among shippers.

4.—Owner of Express Receipt Constituting Straight Bill of Lading Held Entitled to Delivery of Goods under Uniform Bill of Lading Act. Where nonnegotiable express receipt, under Uniform Bill of Lading Act (Secs. 8604-aaaaa and 8604-cc, U. S. Comp. St. 1918), constituted a straight bill of lading, owner of receipt was entitled to delivery of goods under provisions of sections 8604-c and 8604-cc, U. S. Comp. St. 1918.

**5.—Owner of Express Receipt Held Entitled to Recover Against Carrier for Delivery to Another Designated as Consignee on Shipping Tag.** Owner of goods, appearing on express receipt as consignee, held entitled to recover against carrier for delivery to another, in accordance with directions on shipping tag.

**6.—Same—Express Company's Agent in Addressing Package Held Not to be Agent of Shipper.** Even though it may be duty of shipper to properly address package, express agent in addressing it is not shipper's agent, but agent of express company and it would seem company should be liable for loss sustained as result of negligence of agent in addressing package.

**7.—Same—Liability Includes Full Actual Loss, Damage or Injury.** Under Carmack Amendment the carrier's liability is not limited to value at destination but includes the full actual loss, damage or injury to goods.

**8.—Same—Failure to Show Loss as Result of Misdelivery of Goods by Express Company Held to Require Reversal.** In a suit for conversion against express company for misdelivery of goods, failure to show that price of goods at the place of origin of shipment was actual loss, held to require reversal.

---

*Corpus Juris-Cyc. References: Carriers, 10CJ, p. 194, n. 49 New; p. 260, n. 39; p. 261, n. 51; p. 262, n. 64; p. 263, n. 67 New; p 267, n. 87 New; p. 276, n. 6; p. 278, n. 26 New; p. 395, n. 70, 75; Courts, 15CJ, p. 934, n. 89.

Appeal from the Circuit Court of Johnson County.—Hon. Ewing Cockrell, Judge.

REVERSED AND REMANDED.

*A. M. Hartung* and *W. E. Suddath* for appellant.

*Nick M. Bradley* and *M. D. Aber* for respondent.

BLAND, J.—This is a suit for conversion brought in seven counts. There was a verdict and judgment in favor of plaintiffs in the sum of $2031.45 and defendant has appealed.

The evidence shows that plaintiffs made a number of shipments of eggs to one Hamilton, doing business as the International Butter Company, at Philadelphia, Pennsylvania. It was the intention of plaintiffs to make C. O. D. shipments but there was evidence tending to show that plaintiffs were persuaded by the express company's agent at Denton, Missouri, where the shipments originated, to make the shipments to themselves at Philadelphia, Pa.; to attach to the express receipt a draft on the International Butter Company; to send these to a bank at Philadelphia so that Hamilton upon payment to the bank of the amount of the draft might procure the express receipt and take it to the express company and get the goods. Carrying out this idea, the agent filled out the space in the express receipt under the word "consignee" as fol-

lows: "Wall & Son & Ntfy. International Butter Co. Deliver on Surrender Orig. Exp. Receipt" and filled out a shipping tag which was attached to the package reading as follows: "To International Butter Co. Philadelphia, Penna. Deliver on Surrender of Orig. Exp. Receipt. From Wall & Son Independent Shippers of Cream, Eggs and Produce, Denton, Mo." Each shipment was made in the manner described and is covered by a separate count in the petition. The express company ignored plaintiffs' instructions concerning the delivery of the eggs and turned over each shipment to the International Butter Company without requiring the production of the express receipt.

Defendant introduced in evidence rules and regulations duly published and filed with the Interstate Commerce Commission, which provided that—

"4. Unless caused in whole or in part by its own negligence or that of its agents, the company shall not be liable for loss, damage, or delay caused by . . . c. Improper or insufficient packing, securing or addressing."

"(b) Shipments destined to points in the United States and adjacent Foreign Countries must not be accepted when consigned 'To Order of,' or 'to notify' a bank or any person.

"(c) Uniform express receipts are not negotiable and shipments must not be accepted, the delivery of which is conditioned upon surrender of the original receipt at time of delivery.

"(g) Shipments bearing special instructions. If shipments are accepted bearing special instructions of the shipper to the Express Company, affecting the handling or delivery of shipments, and calling for service not provided for elsewhere in the tariffs or Classifications of the Express Company, no responsibility for compliance with such instructions will be assumed, nor will claims be paid by the Express Company for failure to observe or comply with such special instructions."

Another part of the rules and regulations appears as follows:

"Terminal Service:

"Where special switching or other transportation services, not performed by the express company, nor provided for in its tariffs, are desired by shipper or consignee, the Express Company will, upon request, act as agent for the shipper or consignee in securing the service desired, the shipper or consignee to reimburse the Express Company for the cost of the same as provided in the lawfully filed tariffs of the railroad company performing the service.

"Each package, bundle or loose piece in a shipment (except carloads), must be plainly, legibly, and durably marked with name and address of shipper, also name of consignee and station, town or

City and State, to which destined. Where the destination is a City, local address (number and name of street), should be shown.

"Shipments in containers which are customarily used several times for transportation of goods by express, such as bread boxes or poultry coops, which cannot be satisfactorily marked with brush, stencil or waterproof crayon, may be accepted when bearing two address tags securely attached to the package.

"In the event of non-delivery of a shipment by reason of the consignee's refusal to accept it, or by reason of consignee or consignee's address being unknown, written notice thereof must immediately be given to the consignor, if known, by the Agent at destination."

The rule of law announced in the Federal courts govern in this case as it involves interstate shipments. [Dunlap v. Railroad, 187 Mo. App. 201, 204.] Under the provisions of the Interstate Commerce Act (Sec. 8569, U. S. Compiled Stat. 1918) the rules and regulations duly published and filed which in any wise affect the rates or the value of the service to be rendered are controlling upon both parties to the shipping contract. [Pioneer Trust Co. v. Railroad, 204 Mo. App. 328, 330, and cases therein cited.]

". . . any particular bill of lading issued to a particular shipper does not make the contract of shipment but only evidences it. The contract is a general one for all shippers alike, not subject to alteration or change by the shipper or carrier except as the law permits a change applicable to all shippers. Regardless of the terms of any particular bill of lading, the shipper and carrier must take note of the only contract which can be made and that all deviations therefrom are void." [Keithley & Quinn v. Lux et al., 190 Mo. App. 458, 470.]

All of that part of the express receipt quoted after the words "Wall & Son" should be disregarded because forbidden by the rules and regulations on file with the Interstate Commerce Commission. It is admitted that provision g headed "Shipments bearing special instructions" has reference to shipments made in the manner in which these were made although they were shipments "to notify" a "person" and the delivery was conditioned upon the surrender of the original receipt at the time of delivery, which in paragraphs b and c as we have quoted them, is prohibited. It is admitted that these shipments come within paragraph g, that is, shipments accepted by the defendant bearing special instructions, and that these instructions were ignored. Paragraph g provides that the express company should be under no responsibility to comply with such instructions nor would any claim be paid for failure to observe or comply with them.

Defendant is not liable for a mistake of the agent where to so hold would nullify the rules and regulations on file, for that would

work a discrimination among shippers. [Underwood v. Hines, 222 S. W. 1037; Produce Co. v. Railroad, 203 Mo. App. 100; Dunne & Grace v. Railroad, 166 Mo. App. 372; Sutton v. Railroad, 159 Mo. App. 685; Gerber v. Railroad, 63 Mo. App. 145.] Defendant therefore would not be liable for failure to notify the International Butter Company or for a delivery of the shipment to the person lawfully entitled to possession of the same without the surrender of the original express receipt.

The receipt had endorsed upon it the words "non-negotiable." Under the uniform bill of lading act, sections 8604-aaaaa and 8604-cc, U. S. Compiled Statutes, 1918, the receipt constituted a straight bill of lading. Under the provisions of sections 8604-e and 8604-ee of said statutes defendant is liable to anyone having a right of property or possession of the goods if it delivered the goods to one who was not lawfully entitled to possession of them, if it delivered the goods otherwise than to the consignee named in the bill. Of course the consignees were Wall & Son. There is no doubt but that the International Butter Company was not lawfully entitled to the possession of the goods. While defendant was not required to comply with the special instructions with reference to notification to the International Butter Company and could deliver the shipment to it if it were the person lawfully entitled to the shipment without surrender of the original express receipt, it had no right to deliver the shipment to it because it was not lawfully entitled to the possession of the goods. While plaintiff cannot make any claim against defendant for failure to comply with that part of the receipt reading "Ntfy. International Butter Co. Deliver on Surrender Orig. Exp. Receipt," neither can defendant profit by the fact that the receipt contained this language. It was the intention of defendant's agent in filling out the papers to provide for the delivery of the eggs to the International Butter Company upon payment of the draft, securing the express receipt and delivering the receipt to the express company. This plan was prohibited but this did not justify defendant in totally ignoring the rights of plaintiffs when the eggs reached Philadelphia. It knew of the illegal plan and should have fallen back on those parts of the receipt that were valid and the rules and regulations for its guidance. It did not do this but delivered the eggs to a person not lawfully entitled to their possession, contrary to the statute.

Defendant insists that it complied with the information contained in the shipping tag and was, therefore, not liable; that it was the duty of the shipper to properly address the package. There appears to be an inconsistency between the receipt and the shipping tag, at least on their face. From the shipping tag it would appear that the International Butter Company was the consignee

220 Mo. App.—63.

while an examination of the express receipt shows that plaintiffs were the consignees. But defendant in support of its contention that the information contained on the shipping tag governs, argues that the rules and regulations require that the shipper must plainly and legibly mark the package and that the package should be delivered by the express company to the person to whom it is addressed, consequently it is said that the shipping tag must be looked to to determine to whom the package is consigned. The rules and regulations do not expressly say that the shipper is to mark the package nor do they expressly say that it must be delivered to the person to whom it is addressed. It would appear, however, that ordinarily the shipper would be expected to mark the address upon the package thus affording information to the agent of the express company for the making out of the express receipt. To hold that the rules and regulations provide that the markings upon the package govern as to who in fact is the consignee, would be in the teeth of the uniform bill of lading act which contemplates that the name of the consignee shall be stated in the bill of lading or the receipt issued by the common carrier.

In connection with the insistence that it was the duty of the shipper to properly address the package, the point is made that under provision 4-c defendant is not liable for any improper addressing as it was the duty of the shipper to properly address the package and that if he left that matter to the agent of the defendant, the agent in addressing the package was acting as the agent of the shipper and not of the defendant and, therefore, defendant is not liable for the act of the agent in improperly addressing the package, if it was so addressed. However, the provisions of 4-c surely contemplate that in addressing a package the agent is acting as the agent of the express company for it provides that the company should not be liable for improperly addressing unless caused in whole or in part by its own negligence or that of its agent. Should we hold that in all cases the agent in addressing a package is the agent of the shipper and not of the express company, we would nullify the provisions of regulation 4-c. So it would seem that if defendant suffered any loss by reason of improperly addressing the shipping tag, the loss was sustained as the result of the negligence of one of its agents, and plaintiff should not be held accountable therefor. But as the agent was not deceived in any way by the shipping tag, we fail to see the materiality of this point even should it be admitted that he was plaintiffs' agent.

Defendant cites the cases of Parlin & Orendorff Plow Co. of St. Louis v. U. S. Express Co., 26 I. C. C. 561, and American Agricultural Chemical Co. v. B. & A. R. R. Co., 28 I. C. C. 398, 401, and Conference Rulings No. 433, in support of its contention that the

direction in the shipping tag governs. Those cases were ones involving a loss to the shipper by reason of his own negligence and do not involve the matter as to the proper party to whom delivery is to be made at destination and for this reason sections 8604-e and 8604-ee of the Federal Statutes had no application.

Defendant's demurrer to the evidence was, therefore, properly overruled but the case must be reversed and remanded for the reason that there is no competent evidence to show what was plaintiffs' loss. Under the common-law rule the value of the shipment at destination governs. [10 C. J. 386, 395.] Under the Carmack Amendment the carrier's liability is not limited to the value at destination but includes the full actual loss, damage or injury (Bernet, Craft & Kauffman Milling Co. v. N. Y. C. & St. L. Rd. Co., 260 S. W. 508), but it was not shown that the price of the goods at the place of origin of shipment was plaintiffs' actual loss.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

